**AMF INCORPORATED, Plaintiff,**

v.

**COMPUTER AUTOMATION, INC., Defendant.**

**No. C–3–81–223.**

United States District Court, S.D. Ohio, W.D.

Oct. 12, 1983.

Gregor F. Gregorich, New York City, Gordon H. Savage, Dayton, Ohio, for plaintiff.

David S. Cupps, Columbus, Ohio, Benjamin E. King, Los Angeles, Cal., for defendant.

DECISION AND ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MOTION SUSTAINED IN PART, AND OVERRULED IN PART; ISSUES OF CONSPICUOUSNESS AND UNCONSCIONABILITY RULED UPON AS MATTER OF LAW

RICE, District Judge.

Plaintiff AMF Incorporated (AMF) filed this diversity action on April 10, 1981, against Defendant Computer Automation, Inc. (CAI). The case arises out of CAI's delivery of computer equipment to AMF in the late 1970's, pursuant to contracts entered into between the parties in 1976 and 1977. AMF alleges, *inter alia,* that the equipment was faulty, and that CAI failed to properly repair it. A more detailed factual summary of the background of this case can be found in the Court's previous decision, overruling CAI's motion for a change of venue. *See, AMF, Inc. v. Computer Automation, Inc.,* 532 F.Supp. 1335, 1337–39 (S.D.Ohio 1982). Plaintiff has alleged six counts in its amended complaint: breach of contract, breach of warranty, gross negligence, misrepresentation, strict liability, and recovery of attorney's fees.

After extensive discovery, Defendant has moved (Doc. # 83 & 100) for summary judgment on all counts, pursuant to Fed.R. Civ.P. 56. Oral argument was heard on the motion on September 15, 1983. The parties have exhaustively discussed the relevant facts and applicable law in their excellent and lengthy memoranda, and the Court need not summarize same at any length. The Court, for the reasons set out below, sustains the pending motion in part and overrules same in part. Defendant's motion for summary judgment is sustained with respect to Counts III and V, and to limited aspects of Counts I and II (conspicuousness and unconscionability). The motion is overruled with respect to the other counts. Trial will go forward on Counts I and II (concerning whether the limited remedy failed of its essential purpose and the meaning of certain contract language) and IV (concerning alleged fraudulent conduct). In addition, Count VI remains as one remedy for the Plaintiff, should it prevail upon the merits at trial.

I. *Choice of Law*

■ At the outset, the Court must address the issue of which state's law should apply to this case. It is well settled, of course, that a federal court sitting in diversity must apply the choice of law rules of the forum state. *Day & Zimmerman, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975) (per curiam) (citing, *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In the 1977 contract at issue herein, the parties specify that the "agreement shall be governed by the laws of California." Such forum selection clauses in contracts are generally enforced by federal courts, *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 13, 92 S.Ct. 1907, 1915, 32 L.Ed.2d 513 (1972) and Ohio courts, *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.,* 6 Ohio St.3d 436, 453 N.E.2d 683 (1983), and neither party has attacked the validity of that provision. Accordingly, California statutory and decisional law governs the contract claims advanced by AMF (Counts I & II).

Likewise, this Court suggested in its earlier decision that, based on Ohio choice-of-law rules, Ohio law would govern the resolution of the tort claims (Counts III & V). 532 F.Supp. at 1347 n. 19. The parties have not seriously disputed this conclusion, and the Court will adhere to same.

However, the parties *do* contest the applicable law on the misrepresentation (Count IV) and attorney's fees (Count VI) claims, as well as on certain limited aspects of the tort claims. Rather than address these latter issues out of context, the Court will address them as they arise.

II. *Defendant's Summary Judgment Motion*

Under Fed.R.Civ.P. 56 (Rule 56), Defendant's motion can only be sustained when

the movant conclusively demonstrates, based on the pleadings, affidavits, and other material on record, that there exists no genuine issue of material fact, all evidence and inferences drawn therefrom having been construed in the light most favorable to the party opposing the motion. Fed.R. Civ.P. 56(c); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir.1983); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

CAI has divided its argument under four headings: (1) Counts I & II are barred by provisions of the contract and by the Uniform Commercial Code (UCC); (b) Counts III & V are barred by the contract and by the Ohio statute of limitations; (c) Count IV is barred by the contract and presents no genuine issues of material fact; and (d) Count VI is barred by Ohio law. These arguments are considered seriatim.

A. *The Defendant's motion is overruled in part and sustained in part with respect to Counts I & II under the Contract*

Both the 1976 and 1977 AMF/CAI contracts have provisions which spell out warranties and attempt to limit liabilities. Those provisions (in pertinent part), found in attachment "C" to both contracts, are as follows:

3. WARRANTY

A. Seller warrants that products manufactured by Seller shall be free from defects in material and workmanship during a standard warranty period, as follows:

\* \* \* \* \* \*

A.3 All other equipment [i.e. all equipment relevant to this action] is warranted for a period of one (1) year from the date of original shipment to the Purchaser.

Each warranty herein is made to Purchaser and additionally to the party

purchasing directly from such Purchaser.

B. Seller's sole obligation in the event of breach of product warranty shall be the repair or replacement of defective equipment.

\* \* \* \* \* \*

D. Seller does not warrant the merchantability of the equipment or the fitness of the equipment for any particular purpose and makes no warranty, express or implied, other than those specifically contained herein.

9. LIMITATION OF LIABILITY

Seller shall not be liable for any loss or damage which results from the use or application, by Purchaser or any other party of equipment delivered under this Agreement, unless the loss or damage results from defects in the equipment delivered by Seller. Under no circumstances shall Seller be liable to Purchaser or to any third party for any loss of profits or other direct or indirect cost, expenses, losses or consequential damages.

In Counts I & II, Plaintiff has alleged that, by various actions, Defendant breached the 1977 contract and express and implied warranties contained therein. CAI argues that these causes of action are barred by the contract and the UCC. Under UCC § 2–719(1)(a)–(b),[1] parties to a contract may expressly provide that a certain remedy is exclusive. Such a limitation is not enforceable "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose ...." UCC § 2–719(2). Herein, CAI points out that the contract provides an exclusive remedy of "repair or replacement of defective equipment." This exclusive remedy should bar all others, CAI concludes, since the remedy did not "fail of its essential purpose," and, in fact, was fully exercised in this case.

AMF, in contrast, acknowledges the existence of an exclusive remedy but argues

---

1. The parties have cited the Court to numerous sections of the California, Cal.Com.Code § 1101 *et seq.,* and the Ohio, Ohio Rev.Code § 1301.01 *et seq.,* enactments of the UCC. Since the enact-ments are identical (with minor, non-pertinent exceptions), the Court, for convenience, will simply refer to the UCC (unless otherwise indicated).

that it did "fail of its essential purpose," or at least that triable issues of fact exist on same. Moreover, they argue that the contractual language limiting the implied warranties was not "conspicuous," as required by UCC § 2–316(2), and that the language excluding consequential damages is ambiguous, justifying the use of extrinsic evidence (at trial) to enable the finder of fact to construe that provision. For the following reasons, the Court agrees with AMF's position.

As both parties acknowledge, the leading case interpreting the California enactment of UCC § 2–719(2) is *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363 (9th Cir.1978) (*Wilson*). In *Wilson*, the Court held that whether a remedy failed of its essential purpose (in the context of a limited repair remedy, as herein) will depend on whether the warrantor diligently made repairs, whether the repairs cured the defects, and whether the consequential loss in the interim was negligible. *Id.* at 1375 (quoting, Eddy, *On the "Essential" Purposes of Limited Remedies: The Metaphysics of U.C.C. Section 2–719(a)*, 65 Calif.L.Rev. 28, 63 (1977)). The last factor need not be considered, however, if the contract otherwise excludes liability for consequential damages. *Id.*

Counsel have devoted considerable space in their memoranda on whether CAI met the first two *Wilson* factors (i.e., diligent repairs which cured the defects). CAI emphasizes that it set up a "task force" to deal with the complaints from AMF of improperly functioning computer equipment, that its repair centers "provided substantial service" to AMF, and that numerous subassemblies were, in fact, repaired (many more than once) by CAI. In contrast, AMF contends (see the 15-page recital of facts in its Memorandum Contra, Doc. # 111, pp. 5–20) that the CAI repair effort

was inadequate, in that CAI attempted (through virtually the entire period in question) to place the blame on AMF for some or all of the malfunctions, that the formation of the CAI "task force" was tardy, that the quality of repairs was poor, and that certain retrofits and other repairs were not completed until 1979 or 1980, almost three years after the problems initially manifested themselves.

■ The Court must construe these assertions in the light most favorable to AMF. Under that construction, the Court simply cannot conclude, as a matter of law, that the exclusive remedy did or did not "fail of its essential purpose," as that term is defined in *Wilson*. A conclusion that the remedy did *not* "fail of its essential purpose" would be necessary in order for this Court to grant the Defendant's motion for summary judgment on this point. While few of the above-mentioned facts, as such, appear to be disputed, the *significance* of those facts is hotly disputed. It will be for the finder of fact at trial to determine if, in the words of UCC § 2–719(2), "circumstances" caused the remedy "to fail of its essential purpose...." *See, e.g., Winchester v. McCulloch Brothers Garage, Inc.*, 388 So.2d 927, 929 (Ala.1980) (noting jury question on said issue).[2]

This conclusion is underscored by the parties' position on the consequential damages issue. As noted above, the contract excludes CAI's liability for consequential damages. CAI insists that this clause should be enforced, and should not be affected by the Court's conclusion that *another* limited remedy may or may not be enforced. The latter statement is correct under the facts of this case, California law, *Wilson*, 587 F.2d at 1375, and UCC law in general, *see*, Duesenberg, *UCC Annual Survey: Sales and Bulk Transfers*, 37 Bus.Law. 949, 960–61 (1982). In spite of

**2.** Almost all the cases discussing UCC § 2–719(2) have held that certain remedies did or did not fail of their essential purposes as a matter of law, typically on motions for summary judgment. However, the Code does not mandate that this issue is a question of law for the Court to decide, as in UCC § 1–201(10) (conspic-

uousness under UCC § 2–316(2) is "for decision by the court"), and the trier of fact can decide if the language of the code is met. At trial, AMF will have the burden of proof on this issue. J. White & R. Summers, Uniform Commercial Code § 12–10 at 465–66 (2d ed. 1980).

this, AMF argues that the *entire* clause containing the consequential damages limitation is "ambiguous," and that the trier of fact should hear extrinsic evidence to interpret it.

 While the issues are quite close, the Court must agree with Plaintiff. The relevant language arguably is ambiguous, given that the second sentence (excluding consequential damages) seems inconsistent with the first sentence, which permits (in part) the recovery of *"any* loss or damage" if the "loss or damage results from defects in the equipment delivered by" CAI. Even if this ambiguity can be explained away,[3] California follows a relatively liberal policy of usually permitting introduction of parol evidence to enable a trier of fact to determine the intent of the parties, even if the contractual language is unambiguous. *S.A. Empresa v. Boeing Co.*, 641 F.2d 746, 751 & n. 3 (9th Cir.1981); *Wilson*, 587 F.2d at 1370.[4] Based on this policy, the intent of the parties regarding the aforementioned contractual language represents another triable issue. If the trier of fact determines that the exclusion of consequential damages sentence cannot be read broadly, the third *Wilson* factor (amount of consequential loss) may come into play, and be considered by the jury, in determining whether the limited repair remedy failed of its essential purpose.

Having determined that AMF correctly asserts that there are triable issues of fact on whether the limited repair remedy failed of its essential purpose, and whether the provision excluding consequential damages is binding, the Court cannot agree with AMF's additional argument, namely, that

the contractual language limiting remedies is not binding given that same is not "conspicuous" under UCC § 2–316(2). This issue is a question of law to be determined by the Court, footnote 2, *supra.* The cited UCC section states that language limiting implied warranties must be "conspicuous," a term defined in UCC § 1–201(10) as "so written that a reasonable person against whom it is to operate ought to have noticed it." The latter provision also states that "[l]anguage in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color."

There is no dispute that the contractual language in this case is not in "larger or other contrasting type or color." But as CAI emphasizes, this test is *not* dispositive, particularly in *non*-form contracts (as herein), since the first sentence of § 1–201(10) sets up a broader "reasonable person" standard. The modern trend, followed both in California, *e.g., Southern Calif. Edison Co. v. Harnischfeger Corp.*, 120 Cal.App.3d 842, 856, 175 Cal.Rptr. 67, 76 (Ct.App.1981); *Office Supply Co., Inc. v. Basic/Four Corp.*, 538 F.Supp. 776, 784–86 (E.D.Wis.1982) (construing California law), and elsewhere, *see,* J. White & R. Summers, Uniform Commercial Code, § 12–5 at 441 (2d ed. 1980) [hereinafter cited as White & Summers]; Special Project, *Article Two Warranties in Commercial Transactions*, 64 Cornell L.Rev. 30, 186 (1978), is to determine if the bargaining strength and commercial sophistication of the parties made it reasonable that the limiting language was brought to the attention of the parties.[5]

---

**3.** CAI argues that the two sentences are consistent, in that the first addresses "one discrete problem," while the second "is general and all-encompassing." Defendant's Reply Memorandum, Doc. # 114, pp. 9–10. But as AMF points out, Supplemental Memorandum, Doc. # 118, pp. 4–5, this argument borders on *Defendant's* use of extrinsic evidence to explain the contractual language. If so, Plaintiff should not be prevented from presenting like evidence.

**4.** Oddly, AMF argues that Ohio law controls this issue, when Ohio law seems much less liberal on use of extrinsic or parol evidence in contract

actions. *See, Weaver v. Shopsmith, Inc.,* 556 F.Supp. 348, 353 (S.D.Ohio 1982); *Camargo Cadillac Co. v. Garfield Enterprises, Inc.,* 3 Ohio App.3d 435, 438, 445 N.E.2d 1141, 1144–45 (Hamilton Cty.1982). As this Court has held, *supra,* California law controls the contract questions in this case.

**5.** The cases do not make clear if the disclaimer's language must *actually* have been brought to the buyer's attention. *See, Office Supply Co.,* 538 F.Supp. at 784–86. While no California case has expressly addressed this issue, *id.,* the Court agrees that the "reasonable" language in § 1–

Herein, AMF has not seriously disputed CAI's contention that both parties are commercially sophisticated businesses, who had dealt with each other extensively before the 1977 contract. *See also*, 532 F.Supp. at 1337–38 (earlier opinion describing characteristics of the parties). It strains credulity to hold that a business like AMF was not, or should not have been, aware of the language disclaiming implied warranties (or any other provisions in the 1977 contract). Accordingly, the Court rejects AMF's "conspicuousness defense" to the limited liability provisions, and the Defendant's motion for summary judgment will be sustained on this point.

■ For similar reasons, the Court also rejects AMF's eleventh hour [6] claim that the contractual exclusion of consequential damages is "unconscionable." That exclusion, AMF alleges, is both "procedurally" (the language being inconspicuous) and "substantively" (the exclusive remedy having failed of its essential purpose) unconscionable. Both positions, which also present a question of law for the Court, Cal.Civ.Code § 1670.5, are incorrect. Under Cal.Com.Code § 2719(3), the burden of demonstrating unconscionability of a provision limiting remedies lies with the Plaintiff. Mere inconspicuousness is not sufficient to establish unconscionability under § 2719(3); *see, Basic/Four Corp.*, 538 F.Supp. at 787. In any event, Plaintiff has not proffered the sort of facts which might demonstrate that it lacked a "meaningful choice," White & Summers, *supra*, § 4–3 at

153, in entering into the 1976 and 1977 contracts, and thus be procedurally unconscionable. Nor has AMF demonstrated substantive unconscionability, which focuses on the "experience and astuteness of the parties," *Basic/Four Corp.*, 538 F.Supp. at 788; as outlined above, the record in this case amply shows both AMF and CAI to be large, sophisticated merchants. Leading authorities have opined that "findings of unconscionability should be rare in commercial settings," White & Summers, *supra*, § 12–11, at 474 (footnote omitted), and the same result obtains here. The Court rejects AMF's "unconscionability defense" to the limited liability provisions, and the Defendant's motion for summary judgment will be sustained on this point.

### B. *Counts III (gross negligence) and V (misrepresentation) are barred by the Statute of Limitations*

In Counts III and V of its amended complaint, Plaintiff alleges, respectively, that Defendant's negligent acts or omissions caused damage, and that it should be strictly liable for placing defective products and equipment on the market. CAI argues that these tort causes of action are barred by the limited remedies found in the contract, and by the applicable Ohio statutes of limitations. The Court agrees with CAI that the alleged torts are barred by the Ohio limitations periods, and finds it unnecessary to address the difficult questions raised by CAI's initial defense.[7]

201(10) makes actual knowledge (while perhaps one relevant factor) unnecessary to show that language is conspicuous. White & Summers, *supra*, § 12–5 at 444.

6. Apparently, AMF first raised this issue in its Supplemental Memorandum, Doc. # 118, filed on September 16, 1983. At oral argument and in its Supplemental Reply Memorandum, Doc. # 119, p. 6 n. *, CAI objected to litigating this issue, due to the untimely raising of same, suggesting that, *inter alia*, discovery was never taken on that topic. However, CAI has pointed to no specific manner in which it has been prejudiced in litigating this issue, and the Court will permit same to be raised. *Cf. Lawson v. Truck Drivers Local Union 100*, 698 F.2d 250, 256 (6th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct.

69, 78 L.Ed.2d 83 (1983) (amendment of pleadings should be "freely allowed ... in the absence of substantial prejudice to the opposing party").

7. The difficulty principally stems from deciding which forum's law to apply. At first blush, it might seem that Ohio law should govern all issues concerning the tort claims. But CAI argues that the (alleged) waiver in the contract of other remedies (e.g., tort suits) should be governed by the same California law which governs the contract allegations. Defendant's Reply Memorandum, Doc. # 114, p. 12. No published case law seems to have addressed this issue.

In any event, under California law, Plaintiff's negligence and strict liability claims would be barred (i.e., considered waived) by the existence

CAI argues that Ohio Rev.Code Ann. § 2305.10 (Page 1982), which sets out a two-year limitations period for an "action for bodily injury or injuring personal property," should apply to Counts III and V. In contrast, AMF contends that the four-year statute of limitations of either UCC § 2–725 or Ohio Rev.Code Ann. § 2305.09 (Page 1982) (for tort actions not specifically enumerated elsewhere) should apply to these Counts. AMF also argues that *Val Decker Packing Co. v. Corn Products Sales Co.*, 411 F.2d 850 (6th Cir.1969), supports its conclusion.

■ The Court agrees that O.R.C. § 2305.10 must apply to Counts III and V. Those causes of action clearly sound in tort (damage to property), as opposed to the breach of contract and warranty actions alleged in Counts I and II of the amended complaint. As such, the tort claims, in this commercial setting, are governed by O.R.C. § 2305.10. *Mahalsky v. Salem Tool Co.*, 461 F.2d 581, 584 (6th Cir.1972); *Mead Corp. v. Allendale Mutual Ins. Co.*, 465 F.Supp. 355, 361 (N.D.Ohio 1979). *Val Decker, supra,* does not compel a different result. In that diversity action, Plaintiff brought suit under Ohio law for breach of contract, 411 F.2d at 851, which the appellate court characterized as an action for breach of warranties implied by the UCC, mandating the application of the four-year limitations period of the UCC. *Id.* at 852. In dicta, the Court added that an "action ... for breach of warranty or negligence in a products liability case ..." would also be governed by the UCC statute of limitations.

*Id.* at 853 (quoting, 48 O.Jur.2d, Sales, p. 356 (1966)).[8]

Defendant correctly argues that the *Val Decker* dicta has been eviscerated by later case law. In *United States Fidelity & Guaranty Co. v. Truck & Concrete Equipment Co.*, 21 Ohio St.2d 244, 257 N.E.2d 380 (1970), the Ohio Supreme Court held the UCC statute of limitations governs actions for breach of implied warranties under the UCC, and that a contractual relationship must exist. The Court also held that actions for *tort* upon the same set of facts (for breach of a duty by the manufacturer) would be governed by the shorter limitations periods for torts found in O.R.C. § 2305.10. While discussing *Val Decker,* the Court did not address the above-mentioned dicta in that case. Nevertheless, the Ohio Supreme Court was willing to differentiate causes of action in a complaint between those brought under the UCC, and traditional tort claims; each cause of action would be governed by a *different* statute of limitations.

Plaintiff makes much of the fact that it was in contractual privity with Defendant, and argues that the cases applying the shorter, tort statute of limitations should not apply. But as CAI correctly observes, Supplemental Reply Memorandum, Doc. # 119, pp. 14–15, that argument misses the point. The Ohio cases distinguishing UCC and tort claims, for purposes of applying an appropriate limitations period, have only discussed privity in characterizing the cause of action. The existence of contrac-

of the limited remedies found in the 1977 contract. *See, Airlift International, Inc. v. McDonnell Douglas Corp.,* 685 F.2d 267, 269 (9th Cir. 1982); *Tokio Marine & Fire Ins. Co., Ltd. v. McDonnell Douglas Corp.,* 617 F.2d 936, 941 (2d Cir.1980). But this analysis seems to assume that the limited remedies are valid, i.e., did not fail of their essential purposes. Since this Court has held, *supra,* that this issue cannot be resolved in favor of CAI before trial, it would be difficult for this Court to hold, as a matter of law, that the contract waived or barred AMF's tort claims.

Under Ohio law, it appears that the waiver by contract argument would fare much less well, since waiver of the tort claims is not expressed in "clear and unequivocal terms." *Mead Corp.*

*v. Allendale Mutual Ins. Co.,* 465 F.Supp. 355, 362–63 (N.D.Ohio 1979). Assuming no waiver, AMF could bring an action for economic loss under a strict liability, but not negligence, theory. *See,* Judge Manos' extensive discussion of the relevant Ohio cases, *id.* at 363–367.

**8.** In a case cited by AMF, the Sixth Circuit (applying Michigan law), adopted the position of the *Val Decker* dicta. *Reid v. Volkswagen of America, Inc.,* 512 F.2d 1294 (6th Cir.1975). However, *Reid* is not controlling in this case, given its application of *Michigan* law. *See also,* post-*Val Decker* case law discussed later in this opinion.

tual privity does not mandate that *all* causes of action in the amended complaint be governed by the UCC statute of limitations. *Accord, Hahn v. Atlantic Richfield Co.,* 625 F.2d 1095, 1103–04 (3rd Cir.1980) (interpreting UCC and Pennsylvania law; contract and tort actions governed by different statutes of limitation). Each cause of action should be characterized on its own. On that basis, AMF's pure tort claims are governed by O.R.C. § 2305.10, whether or not the parties were in privity.

■ Finally, AMF argues that even if the two-year statute of limitations for torts applies to Counts III and V, those actions accrued after April 10, 1979 (two years before the filing of the original complaint) and thus these claims were timely filed as part of this lawsuit. As this Court has discussed, a cause of action accrues under Ohio law "when one's conduct becomes presently injurious." *Rose v. General Motors Corp.,* 573 F.Supp. 747 at 751 (S.D.Ohio 1983) (quoting, *Children's Hospital v. Ohio Dep't of Public Welfare,* 69 Ohio St.2d 523, 526, 433 N.E.2d 187, 190 (1982)). A tort typically accrues when the Plaintiff discovers, or reasonably should have discovered, the existence of the injury. *See, Oliver v. Kaiser Community Health Foundation,* 5 Ohio St.3d 111, 449 N.E.2d 438 (1983) (medical malpractice); *O'Stricker v. Walter Corp.,* 4 Ohio St.3d 84, 447 N.E.2d 727 (1983) (asbestos injury).

■ AMF contends that the "accrual date of the tort claims can be no earlier than August, 1979," Memorandum Contra, Doc. # 111, p. 38, the time when "its damage was sustained." *Id.,* p. 35. CAI argues that the tort actions accrued, at the latest, early in 1978. Reply Memorandum, Doc. # 114, pp. 23–25. Defendant's position is far more persuasive. As the lengthy record indicates, the failure of CAI's computer equipment, which forms the basis of this lawsuit, began occurring late in 1977; numerous meetings between the parties over these problems took place in 1978. The last deliveries of equipment from CAI to AMF took place in 1978 and

early in 1979. Under these facts, AMF knew, or should have known, that CAI's conduct had caused injury to its business in 1977 or 1978. *See, Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 742 (2d Cir.1979) (UCC action accrued when computer system "was installed and immediately proved itself incapable"). AMF appears to argue that the tort actions did not accrue until 1979, when (in April and July of that year) it settled lawsuits brought against it by certain end-users of the CAI equipment purchased by AMF. However, those lawsuits were initiated in 1978; neither logic nor legal authority supports the proposition that an action only accrues at the *termination* of such collateral litigation. *Cf. Adcor Realty Corp. v. Mellon-Stuart Co.,* 450 F.Supp. 769 (N.D.Ohio 1978).

Accordingly, AMF's tort actions accrued in 1978, or *early* 1979 at the latest. Applying a two-year statute of limitations to those dates indicates that Counts III and V of the present lawsuit were filed in an untimely manner. The motion for summary judgment is sustained with respect to those Counts.

C. *The Defendant's Motion for Summary Judgment is Overruled with Respect to Count IV Sounding in the Law of Fraud*

In Count IV of the amended complaint, Plaintiff alleges that officers and agents of CAI made nine separate fraudulent representations to AMF, concerning various aspects of the functioning and repair of the computer equipment in question. Since those allegations are extensively summarized and discussed in the parties' memoranda, they need not be reviewed again herein.

CAI has moved for summary judgment on all aspects of Count IV. Initially, Defendant argues that the assertion of any fraud claims is barred by the limited remedies found in the 1977 contract. *Airlift International, Inc. v. McDonnell Douglas Corp.,* 685 F.2d 267, 269 (9th Cir.1982) (applying California law). However, this rea-

soning seems to assume that the limited remedy itself is valid. Since the validity of the limited remedy remains a triable issue, it would be improper for this Court, as a matter of law, to hold at this time that the fraud claim is barred.[9]

 Turning to the fraud allegations, Defendant points out that under both Ohio and California law,[10] a plaintiff must prove the existence of various elements of fraud, including: (1) an actual or implied representation, (2) which relates to the present or past, (3) which was material to the transactions, (4) was false when made, (5) made with knowledge of its falsity, or with reckless disregard of its truth, (6) made with intent to mislead the other party into relying upon it, causing (7) justifiable reliance and (8) injury. *See, Dunn Appraisal Co. v. Honeywell Information Systems, Inc.,* 687 F.2d 877, 882 (6th Cir.1982) (suit involving breach of contract and warranty in lease of computers, applying Ohio law); *Glovatorium, Inc. v. NCR Corp.,* 684 F.2d 658, 660 (9th Cir.1982) (California law).

 After analyzing, in some detail, the evidence in the record on each alleged misrepresentation, Defendant contends that each allegation is devoid of one or more of the elements of fraud. In its memoranda, Plaintiff vigorously argues that these elements *are* arguably in the record, or at least that triable issues of fact remain on each allegation. Given the presence of genuine issues of material fact, the Court must agree with Plaintiff.

On each allegation, CAI contends that there is no explicit showing in the record of one or more of the required elements of fraud. AMF appears to concede as much, but points out that fraud, like other actionable wrongs, is susceptible of proof by circumstantial evidence. *General Tire & Rubber Co. v. Firestone Tire & Rubber Co.,* 349 F.Supp. 333, 338 (N.D.Ohio 1972).

This type of evidence, and inferences drawn therefrom, often can only be produced at trial. Thus, fraud typically presents triable issues of fact. *See, Bucyrus-Erie Co. v. General Products Corp.,* 643 F.2d 413, 419 (6th Cir.1981); *Fulton v. Aszman,* 4 Ohio App.3d 64, 446 N.E.2d 803 (Warren Cty.1982). Moreover, some of the elements of fraud, such as intent, are rarely susceptible of disposition on summary judgment. *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1127 (6th Cir.1981), *reh'g denied,* 668 F.2d 878 (6th Cir.1982), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). Thus, summary judgment is "apt to be inappropriate" in complex fraud suits, such as the instant action. 6, pt. 2, Moore's Federal Practice ¶ 56.17[27] (1982 ed.). *Accord, Williamson v. Wilbur-Rogers, Inc.,* 381 F.2d 719, 721 (6th Cir.1967) (per curiam).

A review of the parties' memoranda in this action indicates that the factual issues surrounding the fraud claims are hotly disputed. As such, summary disposition of the claims would be inappropriate at this time. Accordingly, the Court cannot sustain Defendant's motion for summary judgment on the fraud allegations in Count IV of the amended complaint. The motion is accordingly overruled with respect to Count IV.

D. *The Defendant's Motion for Summary Judgment on Count VI is Overruled; California Law Deemed Controlling*

 Finally, in Count VI of the amended complaint, Plaintiff prays for an award of reasonable attorney's fees and costs, given that the 1977 contract provides that such fees and costs "shall be awarded to the prevailing parity [sic] in the event of litigation involving the enforcement or interpretation of" the contract. Defendant

---

9. The Court also need not address, at least at this time, Plaintiff's argument that *Ohio* law would prevent parties from contracting away liability for fraud. It is not clear whether or not Ohio law should apply in this context. *See,* note 7, *supra.*

10. Determining the applicable law to govern the issue involving the fraud claims presents difficult choice-of-law questions. *See also,* note 7, *supra.* Fortunately, the elements of fraud seem to be similar under Ohio and California law.

concedes that such a provision appears to be enforceable under California law, *see, Ecco-Phoenix Electric Corp. v. Howard J. White, Inc.*, 1 Cal.3d 266, 81 Cal.Rptr. 849, 461 P.2d 33 (1969), and, as noted above, the contract contains a choice-of-law clause referring to California. Ohio law, however, prohibits the award of such fees for breach of contract. *See, Allen v. Standard Oil Co.*, 2 Ohio St.3d 122, 125, 443 N.E.2d 497, 500 (1982) (citing, *Gates v. Toledo*, 57 Ohio St. 105, 48 N.E. 500 (1897)); *Motorists Mutual Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 46, 294 N.E.2d 874, 878 (1973); *Federal Deposit Ins. Corp. v. Timbalier Towing Co.*, 497 F.Supp. 912, 929 (N.D.Ohio 1980). For Count VI, Defendant argues, Ohio, not California, law should apply.

 As noted above, Ohio law permits choice-of-law contractual clauses to be enforced. *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co., supra.* That general rule does not apply, however, if either:

> (a) the chosen state law has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to the fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [Restatement (Second) of Conflicts § 188 (1971)], would be the state of the applicable law by the parties.

*Id.* 6 Ohio St.3d at 438–39, 453 N.E.2d at 686 (quoting, Restatement (Second) of Conflicts § 187 at 561 (1971)). *See generally,* Note, *Effectiveness of Choice-of-Law Clauses in Contract Conflicts of Law: Party Autonomy or Objective Determination?*, 82 Colum.L.Rev. 1659 (1982) [hereinafter cited as Columbia Note].[11]

Defendant appears to rely on § 187(b) of the Restatement (Second) of Conflicts to support its position. That section sets out a two-part test to justify rejection of a choice-of-law clause, requiring (in this case) *both* that the fee provision violates a fundamental policy of Ohio law (which must have a greater interest in the determination of that issue) *and* that without the clause, Ohio would be the state of applicable law.

The Court must conclude that neither test can be met by Defendant. With regard to the first prong of the analysis, there is little doubt that enforcement of the fee provision in the 1977 contract would violate a "fundamental policy" of Ohio law, with the broad and somewhat vague scope given that term. Columbia Note at 1672–73, 1675. However, it does not appear that Ohio has a *greater* interest in the determination of that issue, since California not only has law on the topic, but law that is contra. *Cf. id.* at 1677 n. 119 (observing that neither Restatement nor case law is clear on definition of "greater interest").[12]

With regard to the second prong, § 187(b) of the Restatement directs this Court to look to § 188 to determine if Ohio law would govern this case, in the absence of the choice-of-law clause. Section 188(2) lists a number of factors which courts must examine to determine which forum's law

---

**11.** This entire analysis assumes that Ohio law governs the validity of the choice-of-law clause. Arguably, *California* law might be said to govern. However, given that a federal diversity court must apply the forum's choice-of-law rules, it seems to follow that Ohio law (i.e., the *Schulke* case) should apply, although it might be argued that Ohio choice-of-law would direct that California law should govern whether the clause is valid. In any event, the *Schulke* analysis itself requires that a court make a choice of law. *See,* text, *infra.* This Court discussed a similar issue in *Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 273 n. 3 (S.D.Ohio 1981), and reached an analogous conclusion.

This inquiry is not insignificant, since California, unlike Ohio in the *Schulke* case, seems more willing to deviate from the "party autonomy" approach. *See,* Columbia Note at 1670 n. 62 (citing, *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 20 Cal.App.3d 668, 97 Cal.Rptr. 811 (1971).

**12.** The difficulty in applying the Restatement test is exacerbated by the failure of the Ohio Supreme Court to explain any of the elements of § 187. *Schulke,* 6 Ohio St.3d at 440 n. 1, 453 N.E.2d at 687 n. 1 (W. Brown, J., concurring).

should apply in a breach of contract action. These factors include: (a) place of contracting, (b) place of negotiation of the contract, (c) place of performance, (d) location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation, and place of business of the parties. When these factors are applied to the present case, it became an extremely close question as to whether Ohio or California law should apply. This Court, in its earlier decision, had opined that Ohio law would govern the tort claims in this case, largely because Ohio was "the place of injury." 532 F.Supp. at 1347 n. 19. It is not clear, however, that Ohio law would also govern the breach of contract claims. While the record is not entirely clear on these points, it appears that the 1976 and 1977 contracts were negotiated in California, and performed in California, Ohio, and elsewhere. *See also, id.* at 1337–38 (discussing geographic locales of disputes in this case). Arguably, California law could apply to this case.[13]

■ Accordingly, it appears doubtful that Defendant can satisfy the two-pronged test of § 187(b), and the choice-of-law provision would thus be valid under the *Schulke* case. Therefore, the Defendant's motion for summary judgment on Count VI will be overruled, since California law permits the award of attorney's fees and costs in a breach of contract action.

III. *Conclusion*

For the aforesaid reasons, Defendant's motion for summary judgment is sustained with respect to Counts III and V, and to limited aspects of Counts I and II (conspicuousness and unconscionability). The motion is overruled with respect to the other counts. Trial will go forward on Counts I and II (concerning whether the limited remedy failed of its essential purpose, and the meaning of certain contract language) and

IV (concerning alleged fraudulent conduct). In addition, Count VI remains as one remedy for the Plaintiff, should it prevail on the merits at trial.

---

**13.** Nor do the traditional criteria in Ohio for determining the law of a breach-of-contract action offer much help. Ohio courts, and federal diversity courts, have variously stated the place of performance is crucial, *or* the place of contracting, or some amalgam of *both*. *See, Glen-*

*way Industries, Inc. v. Wheelabrator-Frye, Inc.,* 686 F.2d 415, 417 (6th Cir.1982) (per curiam); *Neff Athletic Lettering Co., supra* (discussing cases). *See generally,* Note, *Ohio Choice-of-Law Rules: A Guide to the Labyrinth,* 44 Ohio St.L.J. 239 (1983).