**INVACARE CORPORATION, Plaintiff,**

v.

**SPERRY CORPORATION, Defendant.**

No. C83–4986.

United States District Court,
N.D. Ohio, E.D.

Oct. 2, 1984.

Ernest P. Mansour, Mansour, Gavin, Gerlack & Manos, Cleveland, Ohio, for plaintiff.

David A. Schaefer, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendant.

## ORDER

DOWD, District Judge.

Plaintiff, Invacare Corporation, filed the above-captioned case against defendant, Sperry Corporation, alleging fraud, negligence, and breach of contract[1] involving

---

1. Although plaintiff does not specifically allege breach of contract, plaintiff alleges the computer system failed of its essential purpose in the fourth claim of the complaint. Such a claim amounts to a breach of contract claim. Furthermore, in its brief in opposition to the mo-

the sale of a computer system. Sperry filed a motion for summary judgment asserting the statute of limitations bars this action, the complaint fails to state a valid claim and the written agreements between the parties limit the amount of damages recoverable. For the reasons which follow, the motion for summary judgment is denied.

## FACTUAL ALLEGATIONS

Invacare alleges that in 1980 it decided to acquire a computer, together with programs capable of coordinating Invacare's accounting and manufacturing systems. Invacare alleges that Sperry sent a team of employees, described as manufacturing specialists, to examine Invacare's operation and needs and to make recommendations to Invacare concerning the acquisition of a computer from Sperry. Invacare alleges further that after determining its requirements, Sperry recommended that Invacare purchase a Univac System 80 computer, together with certain programs and services which would fulfill Invacare's needs and requirements.

Invacare alleges that in reliance upon Sperry's expertise, Invacare entered into a series of agreements with Sperry commencing on November 25, 1980, and supplemented subsequently on many occasions, for the acquisition of the Univac System 80 through a lease with an option to purchase.

Invacare alleges that the computer equipment was delivered to plaintiff in May of 1981 and it was operational in November of 1981, but that the Univac System 80 entirely failed of its essential purpose. Invacare alleges that the equipment supplied was incapable of operating the programs and the related data processing products furnished by Sperry. Invacare alleges the programs and the related data processing products were inadequate to fulfill Invacare's needs. Invacare alleges further that, at the recommendation of Sperry, Invacare made additional acquisitions of equipment and programs from Sperry until November 30, 1982, upon the assurance by Sperry that the acquisitions would enable the Univac System 80 to perform its essential purpose. Invacare alleges that, in spite of the augmentation of the Univac System 80 through the additional acquisition of equipment and programs, the computer system continued to fail of its essential purpose.

Invacare alleges Sperry knew the Univac System 80 was entirely inadequate for Invacare's needs and that such needs could only be fulfilled through equipment in computer systems costing more than twice the price of the Univac System 80. Invacare alleges Sperry recommended the Univac System 80 for the purpose of making its price appear lower than prices of Sperry's competitors for Invacare's business, so as to induce Invacare to purchase the Univac System 80. Invacare alleges further that Sperry advised Invacare that the Univac System 80 was "user-friendly," operated by pushing a button, and that the programs provided would satisfy Invacare's needs without requiring modifications or a data processing specialist to operate the system. Invacare alleges that Sperry made such representations knowing they were false and for the sole purpose of inducing Invacare to purchase the system.

Invacare alleges it demanded Sperry to accept the return of the Univac System 80, as augmented, and demanded Sperry to cancel the agreements reached between the parties, but Sperry refused to cancel the agreements or accept the return of the system. Invacare requests a return of the purchase price, as well as incidental, consequential, and punitive damages. Sperry denies Invacare's allegations and counterclaims for $55,232.64 allegedly owed to Sperry on account.

The parties entered into several agreements regarding the hardware, software, and service for the computer system.[2] There appears to be four major agreements which were supplemented by other agree-

---

tion for summary judgment, plaintiff characterizes the claim as one for breach of contract.

**2.** The agreements are attached as exhibits to Sperry's answer.

ments. The first agreement, captioned Six Year Lease And Service Agreement, was signed by a representative of Invacare on October 22, 1980, and signed by a representative of Sperry on November 25, 1980. The second agreement is captioned Systems Service Agreement, which was signed by a representative of Invacare on October 24, 1980, and was signed by a representative of Sperry on November 25, 1980. The Systems Services Agreement provides for future services. The third agreement between the parties is captioned Five Year Lease and Service Agreement, which was signed by a representative of Invacare on February 16, 1981, and was signed by a representative of Sperry on March 16, 1981. The fourth agreement is captioned, Extended Term Lease and Service Agreement and License For Program Products, which was signed by a representative of Invacare on July 7, 1982, and was signed by a representative of Sperry on August 13, 1982.

All of the contracts were supplemented with other contracts in the form of purchase orders. However, all the supplemental contracts either contained the same provisions as the original contracts or incorporate the provisions of the original contracts. The parties entered into supplemental contracts as late as January, 1983. The complaint in this action was filed December 14, 1983.

### DISCUSSION AND LAW

1. *Statute of Limitations.*

The contracts in dispute provide for a two year statute of limitations for any action, regardless of form, arising out of transactions occurring under or contem-

plated under the agreements.[3] Sperry asserts that this action is barred by the two year statute of limitations provided in the contract and the two year statute of limitations provided in Ohio R.C. 2305.10. Revised Code § 2305.10 provides in pertinent part, "An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."[4]

■ Initially, the Court concludes that a four year statute of limitations applies to Invacare's claim of fraud. Ohio R.C. § 2305.09 provides a four year statute of limitations when relief is sought on the ground of fraud. Sperry asserts that the two year statute of limitations provided in the contracts apply to Invacare's claim of fraud, as well as other claims. The Court disagrees. Sperry cannot rely on a provision of the contracts to bar Invacare's claim, when the claim alleges the contracts were induced through fraud. *Ott v. Midland-Ross Corporation*, 600 F.2d 24, 32 (6th Cir.1979); *Dice v. The Akron, Canton & Youngstown Rd. Co.*, 155 Ohio St. 185, 190, 98 N.E.2d 301 (1951); *Eller v. Turvene*, 71 O.L.A. 375, 380, 131 N.E.2d 407 (Darke Cty.App.1955). Consequently, Invacare's claim of fraud is not barred by the statute of limitations.

However, a two year statute of limitations applies to the claims of negligence and breach of contract. The initial contracts were entered into on November 25, 1980 and the majority of the hardware was delivered in May of 1981. In that this action was filed in December of 1983, Sperry asserts that the period of limitations had expired when the action was filed and the action is therefore barred.

---

3. The Systems Service Agreement is the only contract which provides for a one-year statute of limitations.

4. Courts that have interpreted Ohio R.C. § 2305.10 have applied it to claims of negligence in a business setting. *Mahalsky v. Salem Tool Co.*, 461 F.2d 581 (6th Cir.1972); *AMF Inc. v. Computer Automation, Inc.*, 573 F.Supp. 924 (S.D.Ohio 1983).

In some of the contracts the parties agreed Pennsylvania law would apply to disputes arising out of the contracts. Choice of law provisions in contracts are generally enforced by federal courts. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *AMF Inc. v. Computer Automation, Inc.*, 573 F.Supp. 924, 926 (S.D.Ohio 1983). However, the choice of law provision only applies to the claim for breach of contract, it does not apply to the tort claims. *AMF Inc., supra.*

■ If the agreement had in fact been completed and the products delivered by May of 1981, the Court would agree that the contract and negligence claims are barred. However, the parties continued to enter into supplemental agreements through January of 1983. These agreements covered hardware, software, and service, in an apparent attempt to remedy alleged deficiencies in the Univac System 80. Considering that Sperry accepted the benefits of the many supplemental contracts, it cannot now assert that the only contracts that apply for the purposes of the statute of limitations, are those contracts entered into more than two years before the commencement of this action. Upon a review of the contracts, the Court concludes that the contracts incorporate each other and are not independent agreements. Fairness dictates that the most appropriate time to commence the running of the period of limitations is the date of the final supplemental contract. Accordingly, Sperry's motion for summary judgment premised upon the statute of limitations is denied.

### 2. *Failure to State a Claim.*

■ Sperry asserts Invacare's allegations of fraud involve representations as to future performance. Sperry asserts further that representations as to future performance do not qualify as misstatements of existing fact upon which a cause of action for fraud can be based.

Invacare alleges that Sperry's employees examined Invacare's operation and recommended the Univac System 80 computer. Invacare alleges that Sperry's employees represented that the Univac System 80, with certain programs, could process Invacare's accounting and manufacturing systems. Such representations are not as to future performance, but apply to the capabilities of the Univac System 80, along with the appropriate programs, at the time of its delivery. Furthermore, Invacare alleges that upon the discovery that the Univac System 80 was deficient for its needs, Sper-

ry employees represented that the system would work upon Invacare's purchase of various additional hardware and software. Such representations are not representations as to future performance, but are representations as to the Univac System 80's capabilities upon delivery to Invacare or upon delivery of the supplemental hardware and software. Consequently, Invacare alleges a valid claim of fraud regarding the alleged misrepresentations by Sperry employees of the Univac System 80's capabilities.

■ Sperry asserts alternatively that the contractual integration provision in the agreements executed in October and November of 1980 bar Invacare's claims regarding precontract misrepresentations. The contracts provide:

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and shall supersede all previous proposals, both oral and written, negotiations, representations, commitments, writings, agreements and all other communications between the parties.

As noted above, if the contracts were in fact induced by fraud, Sperry cannot rely on provisions of the contract as a grounds for summary judgment on the fraud claim.[5]

■ Sperry asserts further that Invacare's second and third claims of negligence and fourth claim of breach of contract actually allege a claim for computer malpractice which is not actionable. As noted earlier, Invacare's fourth claim involves an alleged breach of contract.[6] Considering that there are numerous contracts involved in this action for computer hardware, software and service, and considering that Invacare alleges the system failed of its essential purpose, the Court views Invacare's fourth claim as one of breach of contract which states a valid claim.

■ Invacare's second and third claims are as follows:

**5.** *See supra* text page 451.

**6.** *See supra* footnote 1.

19. Defendant was negligent in that, in recommending the Univac System 80, and its augmentation to plaintiff, it knew, or in the exercise of ordinary care, it should have known, that the systems were totally inadequate to provide a closed loop manufacturing system for plaintiff, in that the equipment delivered by defendant was incapable of operating the programs and related data processing products furnished by defendant and the programs and related data processing products were inadequate.

20. Defendant was negligent in advising plaintiff as set forth in paragraph 8 because in the exercise of ordinary care it should have known that the programs furnished could not satisfy plaintiff's requirements and that plaintiff would require a data processing specialist to operate its programs.

.　.　.　.　.

23. Defendant was negligent in assigning employees to examine plaintiff's requirements and to recommend data processing products to fulfill plaintiff's needs who lacked sufficient knowledge and expertise to fulfill these functions.

■ Such allegations state a valid claim of negligence. Negligence is the lack of ordinary care. It is a failure to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances. *See generally,* W. Prosser, Law of Torts, 143–45 (4th Ed.1971). The Restatement of Torts provides:

> Unless he represents that he has a greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

Restatement (Second) of Torts § 299A (1965). The comments to § 299A explain the section as follows:

> This section is thus a special application of the rule stated in § 299. It applies to any person who undertakes to render

services to another in the practice of a profession, such as that of physician or surgeon, dentist, pharmacist, occultist, attorney, accountant, or engineer. It applies also to any person who undertakes to render services to others in the practice of a skilled trade, such as that of airplane pilot, precision machinist, electrician, carpenter, blacksmith, or plumber. This section states the minimum skill and knowledge which the actor undertakes to exercise, and therefore to have. If he has in fact greater skill then that common to the profession or trade, he is required to exercise that skill, as stated in § 299, Comment b.

*Id.* Comment b.

■ Invacare alleges that the personnel provided by Sperry failed to perform at a level of ordinary care. If machinists, electricians, carpenters, blacksmiths, and plumbers, are held to the ordinary standard of care in their professions, the Court fails to see why personnel in the computer industry should be held to any lower standard of care. Invacare simply alleges negligence in a business setting. This does not give rise to a new tort of "computer malpractice." Negligence in a business setting is clearly actionable. *cf. First National Bank v. Small Business Administration,* 429 F.2d 280, 287 (5th Cir.1970); *United States v. Bernstein,* 533 F.2d 775 (2d Cir. 1976); *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976).

To support its assertion that Invacare fails to state a claim, Sperry cites *Chatlos Systems v. National Cash Register Corp.,* 479 F.Supp. 738 (D.N.J.1979); *modified in part,* 635 F.2d 1081 (3rd Cir.1980). In *Chatlos Systems, Inc.,* the Court held as follows:

> Though not raised in the pleadings, in post-trial memoranda plaintiff has asserted two additional theories of liability. "Computer malpractice" and strict liability in tort are alleged to have been proven at trial.
>
> The novel concept of a tort called "computer malpractice" is premised upon

a theory of elevated responsibility on the part of those who render computer sales and service. Plaintiff equates the sale and servicing of computer systems with established theories of professional malpractice. Simply because an activity is technically complex and important to the business community does not mean that greater potential liability must attach. In the absence of sound precedential authority, the court declines the invitation to create a new tort. In view of the findings and conclusions, *infra,* the Court deems it unnecessary to rule explicitly on plaintiff's assertion of strict liability in tort.

*Id.* at 479 F.Supp. 741 n. 1.

The Court in *Chatlos Systems* was concerned with creating a new tort on a theory of elevated responsibility on the part of those who render computer sales and service. Such a concept is not before this Court. Rather, Invacare's claims allege a breach of the *ordinary* standard of care to which those in Sperry's industry are held. Such allegations do not involve a new tort of "computer malpractice." Consequently, Invacare's allegations of negligence state a valid claim upon which relief can be granted.

3. *Limitation on Damages.*

The parties do not dispute that almost all of the contracts contain a provision limiting Sperry's liability. In bold face type the contracts provide as follows:

IN NO EVENT SHALL SPERRY UNIVAC BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT OR THE EXISTENCE, FURNISHING, FUNCTIONING, OR THE CUSTOMER'S USE OF ANY PRODUCTS OR SERVICES PROVIDED FOR IN THIS AGREEMENT. THE CUSTOMER'S SOLE AND EXCLUSIVE REMEDY FOR LIABILITY OF ANY KIND INCLUDING NEGLIGENCE, WITH RESPECT TO THE PRODUCTS AND SERVICES FURNISHED HEREUNDER, SHALL BE LIMITED TO THE REMEDIES PROVIDED IN ... THIS AGREEMENT.

THE CUSTOMER FURTHER AGREES THAT SPERRY UNIVAC SHALL NOT BE LIABLE FOR: (1) ANY LOSS OF USE, REVENUE OR PROFIT; (2) ANY CLAIM, DEMAND, OR ACTION AGAINST THE CUSTOMER BY ANY THIRD PARTY EXCEPT AS MAY BE PROVIDED ... HEREIN.

The language of this section is clear and unambiguous, with the effect of limiting Sperry's liability for incidental and consequential damages arising out of the failure of the Univac System 80. However, for two reasons, the provisions are not a basis for summary judgment arising out of Invacare's claims.

Primarily, as stated above, Sperry cannot shield itself with the language of a contract when Invacare's allegations are that the contract itself was induced through fraud.[7] Furthermore, Invacare alleges the Univac System 80, even as augmented, entirely failed of its essential purpose. It is axiomatic therefore, that Invacare alleges the contract failed of its essential purpose. Under certain circumstances, when a contract, including its damage limitation provision, entirely fails of its essential purpose and the product in question cannot be remedied through the means provided in the contract, the Court will disregard the contract, thereby allowing traditional damages. *See generally,* J. White and R. Summers, Uniform Commercial Code, § 12–10 (2nd ed. 1980).

The Court concludes there are genuine issues of material fact regarding whether to apply the provisions limiting damages in the contracts.

CONCLUSION

Pursuant to the reasons set forth above, Sperry's motion for summary judgment is denied.

IT IS SO ORDERED.

7. *See supra* text page 451.